# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KAREN MINIEX, § | | |
| Plaintiff, § | | |
| § | | |
| § | | |
| v. § | | CIVIL ACTION NO. 4:17-CV-00624 |
| § | | |
| HOUSTON HOUSING AUTHORITY, § | | |
| Defendant. § | | |

## PLAINTIFF KAREN MINIEX'S TRIAL MEMORANDUM

Pursuant to the Court's procedures, Plaintiff files this memorandum addressing the law governing the case and all contested issues.

### BACKGROUND

Plaintiff Karen Miniex sued Defendant Houston Housing Authority (HHA) for retaliation under the False Claims Act (FCA), 31 U.S.C. § 3730(h). In March 2012, the President and CEO of HHA, Tory Gunsolley, hired Karen Miniex to serve as the Vice President and General Counsel of HHA. The evidence at trial will show that in April 2016, Ms. Miniex learned that at least one employee in HHA's Houston Choice Voucher Program (HCVP) was illegally selling Veterans Affairs Supportive Housing (VASH) vouchers. A few months prior to this, an employee was terminated at the recommendation of Ms. Miniex for selling Section 8 vouchers. That employee also worked in HCVP. Ms. Miniex reported both of the violations, but her supervisor did not take swift action regarding the VASH fraud. Because of this, Ms. Miniex stepped out of her job duties and reported outside the "chain of command."

Specifically, against Gunsolley's wishes, Ms. Miniex reported the fraud to the HHA Board of Commissioners, the U.S. Department of Housing and Urban Development-Office of Inspector General (HUD-OIG), and the Federal Bureau of Investigation (FBI).

Plaintiff asserts that Gunsolley first began retaliating against her with threats immediately after she went to the Board, then, when Gunsolley learned that Plaintiff had reported the fraud to the HUD-OIG and the FBI, with a "verbal written warning" regarding her attendance, productivity, and attitude in September 2016. Gunsolley had never had any of these concerns before. Then, on November 29, 2016, after Plaintiff filed a grievance on Gunsolley's unfounded verbal warning and disagreed with Gunsolley's claims about the warning, Gunsolley sent Plaintiff home with pay and disconnected her access to her HHA e-mail and cell phone. Gunsolley formally terminated Plaintiff on December 9, 2016, effective December 12, 2016.

## GOVERNING LAW

Plaintiff and Defendant agree to (1) elements of an FCA retaliation action, (2) the causation standard for an FCA retaliation action, and (3) the damages available for a retaliation claimant under the FCA. Plaintiff provides the governing law below consistent with the Court's procedures.

### I. Elements of an FCA retaliation claim

The FCA has an anti-retaliation provision, 31 U.S.C. § 3730(h), that protects those who try to stop fraud from adverse employment actions. In particular, the statute provides:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). When the statute was amended in 2009,[1] Congress expanded the scope of protected activity by providing relief "to any employee discharged for acting 'in furtherance of

---

[1] The FCA was amended in 2009 to add the "efforts to stop 1 or more violations" language, among other things not relevant here. It was amended again in 2010 by the Dodd-Frank Act, but not in any way that affects this case. *See United States ex rel. Heesch v. Diagnostic Physicians Grp., P.C.*, No. 11–0364–KD–B, 2014 WL 4812386, at *4, n. 3 (S.D. Ala. Aug. 5, 2014). For simplicity, Plaintiff will refer to the statutory revision in 2009.

2

other efforts to stop [one] or more violations of this subchapter.'" *Thomas v. ITT Educ. Servs., Inc.*, 517 F. App'x 259, 262 (5th Cir. 2013) (quoting *United States ex rel. Patton v. Shaw Servs., LLC*, 418 F. App'x 366, 371 n.5 (5th Cir. 2011)) (alteration in original). Previously, the statute only protected employees who acted "in furtherance of an action under this section." 31 U.S.C. § 3730(h).

To prevail in a Section 3730(h) lawsuit, a plaintiff must show that (1) she engaged in a protected activity as defined by the statute, (2) the employer knew about the protected activity, and (3) the employer retaliated against the plaintiff because of her protected activity. *United States ex rel. Bias v. Tangipahoa Parish Sch. Bd.*, 816 F.3d 315, 323 (5th Cir. 2016). The Fifth Circuit requires that a Plaintiff show "but-for" causation. *United States ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 333 (5th Cir. 2017). That is, Plaintiff must show that an adverse employment action would not have occurred but-for her protected activity. Plaintiff, however, does not have to prove that her protected activity was the sole cause of the adverse employment action. *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013).

The legal disputes between the Parties are confined primarily to the first two elements and are addressed *infra*. That is, the parties dispute the scope of a protected activity under the Act and dispute what must happen for the employer to know about the protected activity.

## II. Back pay, front pay, and special damages are available under the FCA.

Under the FCA, an employee who suffers adverse employment actions is entitled to all relief necessary to make her whole. 31 U.S.C. § 3730(h)(1). The remedies available for retaliation under § 3730(h) are expansive and include double back pay, reinstatement, and special damages, including the award of costs and attorneys' fees. 31 U.S.C. § 3730(h)(2); *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 412 (2005).

Back pay includes the amount the Plaintiff would have earned had she remained an employee of Defendant HHA from the date of her termination to the date of the verdict. This amount includes wages or salary and such benefits as life and health insurance, stock options, and contributions to retirement. The Court will subtract the amounts of earnings and benefits Defendant HHA proves by a preponderance of the evidence that Plaintiff Karen Miniex received during the period in question. *Cook Cty. v. United States ex rel. Chandler*, 538 U.S. 119, 132 (2003) ("[I]f [the jury] finds liability [under the FCA], its instruction is to return a verdict for actual damages, for which the court alone then determines any multiplier . . . ."); *see also United States ex rel. Mooney v. Americare, Inc.*, 172 F. Supp. 3d 644, 646 (E.D.N.Y. 2016) (discussing proper calculation method for doubling back pay).

Although front pay is not explicitly included as a remedial measure in the FCA, courts have found that Congress intended front pay to be available as a remedy to make the Plaintiff whole. *Wilkins v. St. Louis Hous. Auth.*, 198 F. Supp. 2d 1080, 1091 (E.D. Mo. 2001). Front pay covers monetary damages for future lost wages and benefits. *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 526 (5th Cir. 2001). When reinstatement is not feasible (when, for example, the position no longer exists, the relationship between Plaintiff and Defendant has deteriorated, or for any other reason), the Plaintiff may be entitled to front pay in lieu of reinstatement. *See, e.g.*, *Wilkins*, 198 F. Supp. 2d at 1091 (finding reinstatement inappropriate in FCA case and awarding front pay); *see also Julian v. City of Houston, Tex.*, 314 F.3d 721, 728–29 (5th Cir. 2002) (using front pay in lieu of reinstatement in the ADEA context); *Washington v. Davis*, No. CIV.A. 01-1863, 2002 WL 1798764, at *2 (E.D. La. Aug. 5, 2002) (discussing factors that may make reinstatement infeasible). Substantial animosity between the parties in an employment scenario requiring a high degree of trust may indicate that reinstatement is an

improper remedy. *Wilkins*, 198 F. Supp. 2d at 1091. Here, both Parties have stipulated that reinstatement is not feasible. Therefore, Plaintiff requests front pay.

Special damages under the FCA include damages for emotional distress and attorneys' fees and costs. *Neal v. Honeywell, Inc.*, 191 F.3d 827, 831–34 (7th Cir. 1999). Damages for emotional distress are not doubled. *Id.* at 832. The attorneys' fees and costs are mandatory and calculated by the Court following trial.

## DISPUTED LEGAL CONTENTIONS

Most of the Parties' legal disputes relate to the relevance of *qui tam* actions to an FCA retaliation claim. The Parties disagree about whether (1) the FCA requires a retaliation claimant to show that she intended to bring or assist in an "FCA lawsuit;" (2) the employer had notice of such intention; (3) that requirement or others leads to a requirement that the Plaintiff show she acted outside her job responsibilities; and (4) someone may bring a *qui tam* lawsuit about fraud that has been publicly disclosed. Plaintiff argues that the plain reading of the statute and applicable caselaw provide the answers to these disputes because an FCA retaliation plaintiff need only show efforts to stop one or more FCA violations.

The Parties' remaining legal disagreements are intertwined with the facts of the case. First, Plaintiff asserts that Defendant has produced insufficient evidence of Plaintiff's purported failure to mitigate her damages. Second, Plaintiff Karen Miniex requests a spoliation jury instruction for cell phone data that HHA failed to preserve.

**I. The FCA does not require a retaliation plaintiff to make clear an intention to bring or assist in bringing an "FCA lawsuit" in order to perform a protected activity or provide notice of that protected activity.**

Defendant HHA misstates the law when it insists that an employee must make clear an intention to bring an FCA lawsuit in order to be protected under the FCA's retaliation provision,

5

31 U.S.C. § 3730(h). This statement only accurately states one way to engage in a protected activity. The statute defines protected activity more broadly—as "lawful acts done by the employee . . . in furtherance of an action under this section __or__ other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1) (emphasis added).

The cases cited by Defendant applied the older version of the statute, which only allowed acts "in furtherance of an action" to be a protected activity, not other efforts to stop FCA violations. *See*, *e.g.*, *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566–67 (6th Cir. 2003); *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996). These cases were decided before 2009, when Congress amended the statute to provide the extra relief to employees who make efforts to stop FCA violations. *Thomas v. ITT Educ. Servs., Inc.*, 517 F. App'x 259, 262 (5th Cir. 2013). Although the Fifth Circuit has not analyzed this new language in a published opinion, it has acknowledged that the statutory amendment would affect the way the FCA retaliation elements apply. *Id.* The purpose of the amendment is "to untether these newly protected efforts" from any potential need to show that an FCA action is in the offing. *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 201 (4th Cir. 2018). "[T]he 2009 amendment had the effect of broadening the universe of protected conduct under § 3730(h), at least with respect to 'efforts to stop' FCA violations." *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 97 (2d Cir. 2017). The new statute thus only requires a "nexus" to a potential FCA violation; there is no requirement that a plaintiff's acts might "lead to a viable FCA action." *Grant*, 912 F.3d at 202. For these reasons and the others articulated therein, Plaintiff's motion in limine no. 3 should be granted.

6

## II. An employee need not act outside of her regular job responsibilities to prevail under a retaliation action, even if she is a "fraud alert" employee.

Defendant also claims that an employer's notice of protected activity requires that Plaintiff show she acted outside of her job responsibilities. Defendant has an overly restrictive reading of the caselaw and the statute. Acting outside of job responsibilities is one way to show employer notice of protected activity, but it is not the exclusive way.

The caselaw on notice of a protected activity never required actions outside of a plaintiff's regular job responsibilities, but the notice requirement is certainly not so stringent in the wake of the 2009 FCA amendments. In *Robertson v. Bell Helicopter Textron, Inc.*, the Fifth Circuit held an FCA retaliation plaintiff failed to "rebut his supervisors' testimony regarding their lack of knowledge that he was conducting investigations . . . in furtherance of a *qui tam* action," because he did not adequately communicate his protected activity or act in a way that otherwise made the protected activity known to the employer. 32 F.3d 948, 952 (5th Cir. 1994). So even before the 2009 amendments, the Fifth Circuit acknowledged that a fraud-alert employee could provide notice to an employer of a protected activity, and therefore prove retaliation causation, in two different ways. *Id.* First, the employee could communicate his protected activity to his employer by "characteriz[ing] his concerns as involving illegal, unlawful, or false-claims investigations" or otherwise expressing heightened concerns to his supervisors. *Id.* Alternatively, the employee could take actions outside of the scope of his job responsibilities. *Id.* Thus, even under old law, an employer could be on notice of a protected activity not only by the protected activity being outside the employee's job responsibilities but also by someone's communication of that protected activity to the employer.

But *Robertson* is also limited because of the old FCA statute. As the Court explained, Robertson's employer needed to know "that Robertson's activities *were in furtherance of an action*

7

under the False Claims Act." *Id.* (emphasis added). The employer-knowledge element of an FCA retaliation claim now "plainly encompasses more than just activities undertaken in furtherance of a False Claims Act lawsuit." *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 434 (4th Cir. 2015). Indeed, notice can now be satisfied if the employer knows that an employee's actions are in furtherance of an FCA action ***or*** if the employer knows that the employee's actions are some other effort to stop fraud. 31 U.S.C. § 3730(h)(1). While acting outside of one's job responsibilities can certainly give an employer such notice, it is just one of many possibilities.

### III. The statute has simple standards: the plaintiff need only prove one or more efforts to stop fraud and notice to the employer of those efforts.

The statute provides that "efforts to stop 1 or more violations of this subchapter" are protected activity. 31 U.S.C. § 3730(h)(1). An effort to stop one or more violations of the FCA simply amounts to a "conscious exertion of physical or mental power" "to interrupt or prevent the continuance or occurrence of" a false or fraudulent claim. *Chorches*, 865 F.3d at 96–97 (citing Webster's Third New International Dictionary, Unabridged (2002)). The Fifth Circuit has not analyzed the amended statute in a published opinion, but an unpublished opinion put it plainly: "A protected activity is one motivated by a concern regarding fraud against the government." *Thomas*, 517 F. App'x at 262.

Notice of this protected activity mirrors the standard for protected activity. *Manfield v. Alutiiq Int'l Sols., Inc.*, 851 F. Supp. 2d 196, 204 (D. Me. 2012). As the Fifth Circuit noted under the old version of the statute, an employer should know a plaintiff's "activities were in furtherance of an action under the False Claims Act." *Robertson*, 32 F.3d at 952. The amendments make a simple change to that standard; an employer should know that the plaintiff's activities were either in furtherance of an FCA action ***or*** that the activities represented efforts to stop one or more false or fraudulent claims. As *Robertson* suggested, that notice can be made either through

8

communications between the employee and the employer or actions of the employee that indirectly give notice. *See id.* Rather than some form of special notice, however, notice is a fact-dependent matter under the current FCA, just as it is under other fraud statutes. For instance, when an employee informs her employer of facts sufficient to alert the employer to fraudulent conduct, "the employer has a sufficient basis to suspect that the employee is protected against reprisal for communicating that information." *Wiest v. Lynch*, 710 F.3d 121, 134 (3d Cir. 2013) (interpreting the whistleblower-retaliation provisions of the Sarbanes–Oxley Act of 2002). Just as a plaintiff need only prove an effort to stop fraud to prove a protected action, the notice element requires the plaintiff to prove only that the employer knew of that effort.

### IV. Whether a private citizen may bring a *qui tam* action based on public disclosure of the fraud is irrelevant to this suit.

Defendant appears to maintain that a retaliation claimant must show that she is the original source of the fraud allegation or that there was no public disclosure of same to maintain a viable retaliation claim under the FCA. This is a fundamental misunderstanding of the original source exception to the public disclosure bar in FCA cases. It is irrelevant to this particular case whether a private citizen may bring such a suit in any circumstance, regardless of any public disclosure—especially since § 3730(h) does not require a plaintiff to bring or assist in a *qui tam* suit. Nevertheless, Defendant takes the position that the public disclosure bar to the *qui tam* act is an issue relevant to this case for purposes of the Joint Pretrial Order. To the contrary, the public disclosure bar and original source exception do not apply to retaliation lawsuits. *See Salter v. Liberty Hill Indep. Sch. Dist.*, No. A-06-CA-777-SS, 2007 WL 9710018, at *2 (W.D. Tex. July 10, 2007) ("[T]his [FCA retaliation] case is not subject to the original source requirement because Plaintiff's action is not based upon 'the public disclosure of allegations or transactions.'").

9

### V. Defendant has offered no evidence that Ms. Miniex failed to mitigate her damages.

The Parties dispute whether Ms. Miniex took steps to reasonably mitigate her damages, which is also the subject of Plaintiff's motion in limine no. 2. Defendant has failed to produce any evidence that shows (1) substantially equivalent work was available and (2) Ms. Miniex did not exercise reasonable diligence in obtaining it.

HHA has asserted an affirmative defense of Ms. Miniex's failure to mitigate damages. This defense requires HHA to show that (1) substantially equivalent work was available and (2) the plaintiff did not exercise reasonable diligence to obtain it. *Buckingham v. Booz Allen Hamilton, Inc.*, 64 F. Supp. 3d 981, 984–85 (S.D. Tex. 2014) (granting plaintiff's summary judgment where Defendant failed to meet burden on both elements of defense). "Substantially equivalent employment" means "employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated." *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990). Under this requirement, Ms. Miniex has no obligation "to accept employment that is not substantially equivalent to her prior employment in order to minimize damages." *Vaughn v. Sabine Cty.*, 104 F. App'x 980, 984 (5th Cir. 2004). Ms. Miniex's duty to mitigate does not require her to "go into another line of work, accept a demotion, or take a demeaning position." *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982).

As set out in Plaintiff's motion in limine no. 2, Defendant has offered no competent evidence of either prong. Consequently, the motion in limine should be granted, and Defendant's proposed instruction on mitigation of damages should be rejected.

## VI. Defendant failed to preserve digital data in accordance with Federal Rule of Civil Procedure 37(e)(1).

During discovery, Plaintiff Karen Miniex complained of Defendant HHA's failure to produce Ms. Miniex's employer-provided cell phone. (Dkt. 80 at 21–22). HHA failed to preserve the data of Ms. Miniex's cell phone. Accordingly, Plaintiff requests a spoliation instruction to remedy the prejudice to her case. Defendant does not agree to this instruction.

"If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it," the Court "may order measures no greater than necessary to cure the prejudice" found. Fed. R. Civ. P. 37(e)(1). Ms. Miniex's cell phone data would be especially valuable to rebut HHA's main contention—that Ms. Miniex was reprimanded and terminated due to a lack of communication about absences. The text messages and phone calls would be the most direct evidence that Ms. Miniex actually made regular communications and of Gunsolley's approval of her time out of the office. Furthermore, text messages and other cell phone data could show further evidence of Plaintiff's protected activity. This lack of crucial evidence prejudices Plaintiff Karen Miniex.

Recently, a court in the Southern District of Texas evaluated a defendant school district's failure to preserve video footage critical to a lawsuit. *See generally Estate of Esquivel v. Brownsville Indep. Sch. Dist.*, No. 1:16-cv-40, 2018 WL 7050211 (S.D. Tex. Nov. 20, 2018). The Court first concluded that Plaintiffs went too far in recommending the Court exclude some of the school district's evidence. *Id.* at *6. Recognizing that sanctions under Rule 37(e)(1) should not be as severe as sanctions when bad faith is proved, the Court still explained that "BISD should not be allowed to hide its spoliation of evidence from the jury, however unintentional that spoliation may have been." *Id.* at *7. "Although some spoliation cannot be completely cured, the jury should be allowed the choice to infer that the loss of the footage may have prevented Plaintiffs from

11

producing evidence of BISD's liability." *Id.* The Court thus recommended a jury charge that instructed the jury that (1) the school district failed to take reasonable steps to preserve the evidence, (2) the school district's failure was not the result of bad faith, and (3) the spoliation may have prevented plaintiffs from producing evidence of liability. *Id.* This Court should take similar action here.

The spoliation charge offered by Plaintiff Karen Miniex is modeled after the conclusion of that court. The charge informs the jury of the state of play while also instructing the jury that it may make whatever inferences (if any) it deems reasonable from that information. The instruction thus is exactly what is needed to cure the prejudice to Ms. Miniex, and it should be read to the jury.

## CONCLUSION

For the reasons herein, Plaintiff respectfully urges the Court to adopt her interpretation of the contested issues of law.

Respectfully Submitted,

/s/ *Zenobia Harris Bivens*
Zenobia Harris Bivens
State Bar No. 24065378
Joel M. Androphy
State Bar No. 01254700
Victoria Mery
State Bar No. 24094845
Michael Hurta
State Bar No. 24097860
Berg & Androphy
3740 Travis Street
Houston, Texas 77002
Telephone (713) 529-5622
Facsimile (713) 529-3785
Email: zbivens@bafirm.com
Email: jandrophy@bafirm.com

12

                              Email: vmery@bafirm.com
                              Email: mhurta@bafirm.com

*Attorneys for Plaintiff Karen Miniex*

Case 4:17-cv-00624   Document 194-6   Filed on 02/26/19 in TXSD   Page 15 of 15

## CERTIFICATE OF SERVICE

This is to certify that on this date the foregoing was electronically filed with the Clerk of the Court using the CM/ECF System.

Dated this 26th day of February, 2019.

                                              */s/ Zenobia Harris Bivens*
                                              Zenobia Harris Bivens
                                              BERG & ANDROPHY