## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| KAREN MINIEX, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-00624 |
| | § | |
| HOUSTON HOUSING AUTHORITY, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Before the Court in this False Claims Act ("FCA") retaliation lawsuit is Plaintiff Karen Miniex's Proposal for Final Judgment ("Motion for Final Judgment" or "Motion") [Doc. # 226].  Defendant Houston Housing Authority ("HHA") has responded,[1] and Miniex replied.[2]  The Motion is now ripe for decision.  Based on the parties' briefing, pertinent matters of record, and relevant legal authorities, the Court **grants in part and denies in part** Miniex's Motion for Final Judgment.

---

[1] Defendant's Response to Plaintiff's Proposal for Final Judgment ("Response") [Doc. # 238].

[2] Plaintiff Karen Miniex's Reply in Support of Plaintiff's Proposal for Final Judgment ("Reply") [Doc. # 239].

I.   **BACKGROUND**

HHA, one of the nation's largest public housing authorities, hired Miniex in March 2012 to serve as its general counsel. Miniex served in that role until her employment was terminated in December 2016 following a dispute with HHA's president and CEO, Tory Gunsolley, over the proper handling of a fraud investigation. Miniex sued HHA in February 2017, alleging she was retaliated against and ultimately fired for going outside the chain of command to report her concerns about fraud in violation of 31 U.S.C. § 3730(h).

On March 21, 2019, a jury entered a verdict in Plaintiff Miniex's favor on her FCA retaliation claim. Verdict Form [Doc. # 233]. The jury assessed the following damages:

- Back pay: $370,571.00;

- Front pay: $600,000.00;

- Past pain and suffering, inconvenience, mental anguish, and loss of enjoyment in life: $317,750.00;

- Future pain and suffering, inconvenience, mental anguish, and loss of enjoyment in life: $215,000.00.

On March 25, 2019, Miniex filed her Motion for Final Judgment, requesting the Court enter final judgment against HHA in the sum of $1,938,409.16, plus post-judgment interest, attorney's fees, and costs.

On March 26, 2019, HHA filed its Response, requesting the Court enter final judgment against HHA only in the sum of $1,388,288.00. HHA also informed the Court that it will move for judgment as a matter of law and a new trial after final judgment is entered.

## II. DISCUSSION

The parties clash over the proper method to calculate Miniex's back wages and whether she is entitled to the noneconomic damages awarded by the jury. HHA does not dispute the jury's assessment of $600,000 in front pay or Miniex's calculation of $46,786.16 in interest on back pay.[3] The Court concludes that the award to Miniex should include $370,571.00 in backpay, $46,786.16 in interest on that back pay, the statutory double back pay of $370,571.00, $600,000.00 in front pay, and $532,750.00 for past and future pain and suffering, inconvenience, mental anguish, or loss of enjoyment in life.

### A. Back Pay

As a successful FCA retaliation claimant, Miniex is entitled a statutorily mandated award of past damages equal to "2 times the amount of back pay." *See*

---

[3] Miniex correctly calculated the interest on her back pay without doubling her award. *See* 31 U.S.C. § 3750(h)(2) (stating that relief includes "2 times the amount of back pay, [and] interest on back pay"); *Neal v. Honeywell, Inc.*, 995 F. Supp. 889, 896 (N.D. Ill. 1998), *aff'd*, 191 F.3d 827 (7th Cir. 1999) ("[T]he interest payable is to be calculated before the back pay is doubled." (quoting H.R. REP. NO. 99-660, at 23 (1986))).

31 U.S.C. § 3730(h)(2). Miniex contends that her unpaid salary from HHA should be doubled *before* subtracting any earnings obtained from other sources in mitigation.[4] HHA counters that Miniex's lost past HHA earnings should be doubled *after* reduction for her actual post-employment earnings.[5] The parties' competing calculations result in a $17,371.00 difference in potential back pay award.

The Court must decide this dispute with little statutory or judicial guidance. The Fifth Circuit has not addressed the meaning of "2 times the amount of back pay" in § 3730(h)(2). Moreover, "neither the FCA nor its legislative history specifically addresses the question of how to calculate '2 times the amount of back pay,'" *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 891-92 (8th Cir. 2000). Having carefully the considered the statutory language, the purpose of § 3730(h)(2), and the limited available authority, the Court concludes HHA's position is more persuasive. Back pay under § 3730(h)(2) is the net loss Miniex

---

[4] Miniex calculates she is owed $758,873.00 in past damages comprising her lost pay ($388,122.00), multiplied by two ($776,244.00), less $17,371.00 in post-HHA wages actually earned from other sources. Miniex's lost pay figure of $388,122 is set forth in her post-trial filing entitled Summary of Data [Doc. # 237-8] and her damages expert's opinion.

[5] HHA calculates Miniex is owed $741,502.00 for doubled back pay comprising her lost HHA salary ($388,122.00) less $17,371.00 in wages earned from other sources, for net back pay of $370,751.00, which is multiplied by two.

4

suffered, which is her HHA lost wages less the actual wages she earned from third party sources before trial. For the statutory doubling of back pay, the net loss will be multiplied by two.

The Court's analysis begins with the statutory text. Under 31 U.S.C. § 3730(h), persons who experienced retaliation for activity protected by the FCA "shall be entitled to all relief necessary to make [them] whole." 31 U.S.C. § 3730(h)(1). This relief "shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees." *Id.* § 3730(h)(2).

Section 3730(h)(2)'s text strongly suggests that the Court should subtract earned wages from lost wages before doubling. Under § 3730(h)(2), prevailing plaintiffs are to receive "2 times the amount of back pay." "Back pay" is a term of art for a remedy designed to put the employee "in the same position they would have been had the violation never occurred." *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1283 (5th Cir. 1994). Its use "suggests a remedy such that the damaged employee is restored 'as nearly as possible, to that which would have [been] obtained but for the [violation.]'" *Id.* (alterations in original) (quoting *Phelps Dodge Corp. v. NLRB*,

313 U.S. 177, 194 (1941)).  By using the phrase "back pay," Congress evinced its intention to allow FCA retaliation plaintiffs to recover double the sum required to make them whole—*i.e.*, double their *net* loss.

This reading is corroborated by § 3730(h)(2)'s use of "back pay" in the next clause—"interest on the back pay."  Courts have interpreted "back pay" in this interest clause to mean net lost wages.  *See, e.g.*, *Wilkins v. St. Louis Hous. Auth.*, 198 F. Supp. 2d 1080, 1090 (E.D. Mo. 2001), *aff'd*, 314 F.3d 927 (8th Cir. 2002). Indeed, even a court that held that lost wages should be doubled before subtracting earned wages simultaneously held that "interest on the back pay" allows interest recovery only on the whistleblower's net lost wages.  *See Neal v. Honeywell, Inc.*, 995 F. Supp. 889, 897 (N.D. Ill. 1998) ("Do we award interest on the back pay of $50,000 or the net back pay of $40,000? Logic suggests it must be net back pay . . . ."), *aff'd*, 191 F.3d 827 (7th Cir. 1999).  Because "back pay" in the interest clause means net loss, "back pay" in the immediately preceding clause should similarly be interpreted to mean net loss.  "Generally, 'identical words used in different parts of the same statute are . . . presumed to have the same meaning.'" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006) (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005)).

Section 3730(h)'s manifest purpose also corroborates HHA's reading.  The FCA's retaliation provision is designed to make injured whistleblowers "whole."

6

P:\ORDERS\11-2017\624MFJ.docx  190417.1531

*See* 31 U.S.C. § 3730(h)(1). Doubling proven lost wages from the retaliator and then correcting for earned wages "would award damages for an injury that in fact never occurred and thus would give [the whistleblower] a windfall, rather than compensation." *See Hammond*, 218 F.3d at 892.

Two district courts have reached an opposite result, holding that lost wages should be doubled before subtracting earned wages. *See Neal*, 995 F. Supp. at 896; *United States ex rel. Mooney v. Americare, Inc.*, 172 F. Supp. 3d 644, 646 (E.D.N.Y. 2016). This Court does not find these decisions persuasive. In *Neal*, the district court gave no justification for doubling before subtracting. In *Americare*, the district court resolved the relevant interpretative question by analogizing to *United States v. Bornstein*, 403 U.S. 303, 314-15 (1976). In *Bornstein*, the Supreme Court interpreted a now-superseded FCA provision, which states that the Government is awarded "double the amount of damages which the United States may have sustained" by the perpetration of fraud against it. 403 U.S. at 305 n.1. *See* False Claims Act, ch. 67, 12 Stat. 696, 698, sec. 3 (1863). The Supreme Court held that "in computing the double damages authorized by the Act, the Government's actual damages are to be doubled before any subtractions are made for compensatory payments previously received by the Government from any source." *Id.* at 316. While the *Bornstein* Court did not perform a fulsome textual analysis, it did observe the statute "speaks of doubling 'damages' and not doubling

7

'net damages.'" *Id.* at 314 n.10. The Supreme Court focused on the statute's compensatory purpose, which the Court held was "best served by doubling the Government's damages before any compensatory payments are deducted." *Id.* at 315.

The Court is unpersuaded by *Americare*'s analogy to *Bornstein*. Textual differences distinguish the superseded FCA provision considered in *Bornstein* and § 3730(h)(2). As the *Bornstein* Court noted, the provision there doubled the Government's "damages" not its "net damages." *See id.* at 314 n.10. By contrast, Section 3730(h)(2)'s doubles an injured whistleblower's "back pay," a term which incorporates the concept of net loss. *See Carpenters Dist. Council*, 15 F.3d at 1283. Moreover, the *Bornstein* Court placed special emphasis on the fact that the Government was seeking to recover for "fraudulent claims" against it. *See Hammond*, 218 F.3d at 892 n.7 (emphasis added) (quoting *Bornstein*, 423 U.S. at 315). The *Bornstein* Court concluded that fraudulent claims imposed "additional 'costs, delays, and inconveniences' . . . warranting additional damages." *See id.* (quoting *Bornstein*, 423 U.S. at 315). FCA whistleblowers, by contrast, are owed compensation for their employer's retaliatory action, not for any fraud the employer may or may not have committed. Miniex does not argue, and the Court discerns no basis to conclude, that retaliation against private individuals in violation of the FCA imposes "additional 'costs, delays, and inconveniences'" on

8

whistleblowers beyond what the rest of the FCA allows them to recover. *See id.* *Bornstein* is inapposite for textual and practical reasons.

As the plain text of § 3730(h)(2) commands, Miniex's award is properly calculated by doubling the back pay awarded by the jury—*i.e.*, the difference between her lost HHA pay and wages actually earned from other entities. The jury found Miniex's lost pay from HHA reduced by the wages she earned elsewhere to be $370,751.00. The Court doubles this amount and awards Miniex $741,502.00 in back pay.

### B. Noneconomic Damages

HHA next contends that the jury's assessment of $532,750.00 in past and future emotional damage is not sufficiently supported by the evidence at trial. Miniex contends the jury's award was supported by her own and other witnesses' trial testimony. The Court agrees with Miniex.

"Compensatory damages for emotional distress and other intangible injuries are not presumed from the mere violation of . . . statutory rights, but require specific individualized proof, including how each Plaintiff was personally affected by the discriminatory conduct and the nature and extent of the harm." *DeCorte v. Jordan*, 497 F.3d 433, 442 (5th Cir. 2007). "In many cases, 'a claimant's testimony alone may not be sufficient to support anything more than a nominal damage award.'" *Oden v. Oktibbeha County*, 246 F.3d 458, 470 (5th Cir. 2001)

(quoting *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 938 (5th Cir. 1996)). "Nevertheless, corroborating testimony and medical evidence is not required in every case involving compensatory damages." *DeCorte*, 497 F.3d at 442.

Miniex testified that, in June 2016, after she disagreed with Gunsolley over the proper handling of a fraud investigation, she started to fear for her job and became stressed, "desperate," anxious all the time, had to "steel" herself when she went to work, and would sometimes sit in the car and cry before she was able to enter the workplace. She testified that she started seeing a psychiatrist in June 2016 for her anxiety. Multiple witnesses corroborated that Miniex's behavior and attitude changed around June 2016. For example, various HHA employees and former employees testified that Miniex's demeanor and behavior changed around June 2016. Also, Miniex testified that following her termination she was unable to find comparable work, despite applying for 175 different jobs. Miniex testified that this added to and continues to add to her stress and anxiety because she is a single mother and also must financially assist others in her extended family.

Miniex's testimony and several witnesses' corroboration have the requisite degree of specificity to support the jury's award and overcome HHA's challenge. A reasonable jury could have concluded Miniex suffered compensable non-economic damages. *Cf. Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1046 (5th Cir. 1998) (rejecting sufficiency challenge when the only evidence of mental anguish

was the plaintiff's on testimony that her termination was "a major inconvenience," she suffered from "low self-esteem," suffered financial hardships, had stress and anxiety attacks, cried a lot, and experienced sleeplessness).

HHA relies on *United States ex rel. Cody v. ManTech Int'l, Corp.*, an unpublished Fourth Circuit case to challenge the validity of the jury's assessment of emotional damages. *See* 746 F. App'x 166, 184 (4th Cir. 2018). There, the plaintiff "testified in [a] conclusory fashion, indicating generally that he was upset and felt embarrassed or disrespected." *Id.* The record was also "devoid of any evidence that [the plaintiff] manifested physical symptoms of his purported emotional distress or that he sought medical or psychiatric aid for emotional distress." *Id.* Here, by contrast, Miniex testified to her specific reactions (such as steeling herself in the car before work, seeing a psychiatrist, and crying) why she was particularly affected by the termination (her inability to find a new job, the burden of being a single mother, and her extended family financial obligations), and testified that she received psychiatric counseling for her stress and anxiety. Moreover, independent witnesses testified to her behavioral changes.

HHA also argues in passing that the jury's award of non-economic damages to Miniex was excessive. HHA does not, however, move for remittitur, cite any cases addressing remittitur, or meaningfully address the excessiveness issue. The Court therefore does not reach this question.

11

## III. <u>**CONCLUSION AND ORDER**</u>

Miniex's "back pay" award is properly calculated by doubling the back pay awarded by the jury—*i.e.,* the difference between her lost HHA wages and earnings from other sources. Moreover, the award of non-economic damages was supported by adequate trial testimony. The jury's other assessments of damages are not challenged. It is therefore

**ORDERED** that Plaintiff Miniex's Motion for Final Judgment [Doc. # 226] is **GRANTED in part and DENIED in part**. It is further

**ORDERED** that Plaintiff Miniex shall recover from Defendant HHA the following:

- Back pay of $370,751.00, plus 31 U.S.C. § 3750(h)(2)'s back pay enhancement of another $370,751.00, for a total of $741,502.00;

- Pre-judgment interest on the jury's award of back pay of $46,786.16;

- Front pay of $600,000.00;

- Past pain and suffering, inconvenience, mental anguish, and loss of enjoyment in life of $317,750.00;

- Future pain and suffering, inconvenience, mental anguish, and loss of enjoyment in life of $215,000.00;

- Post judgment interest at a rate of 2.43%, as provided by 28 U.S.C. § 1961; and

12

- Attorneys' fees and costs to be determined on post-judgment motion.

The Court will issue a separate, appealable final judgment.

SIGNED at Houston, Texas, this 17th day of **April, 2019.**

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE