United States District Court
Southern District of Texas
**ENTERED**
September 13, 2019
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KAREN MINIEX, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-0624 |
| | § | |
| HOUSTON HOUSING AUTHORITY, | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER
ON FEES AND COSTS**

Before the Court in this False Claims Act ("FCA") retaliation lawsuit is Plaintiff Karen Miniex's Motion for Attorneys' Fees & Costs ("Motion") [Doc. # 261]. Defendant Houston Housing Authority ("HHA") responded,[1] and Miniex replied.[2] Intervenor The Law Offices of E. Sharon Thornton, LLC ("LOESTLLC")—whose principal, Sharon Thornton, formerly represented Miniex in this lawsuit—has submitted declarations and billing records, seeking to demonstrate Miniex's entitlement to additional attorney fees and costs for Thornton's work.[3] The Motion is ripe for decision. Based on the parties' briefing,

---

[1]   Defendant Houston Housing Authority's Response to Plaintiff Karen Miniex's Motion for Attorney's Fees & Costs ("Response") [Doc. # 267].

[2]   Plaintiff's Reply in Support of Motion for Attorney's Fees & Costs ("Reply") [Doc. # 271]. HHA did not file or seek to file any sur-reply.

[3]   E. Sharon Thornton, Esquire's Declaration in Support of Plaintiff's Application for Costs and Fees ("Thornton's Declaration") [Doc. # 260]. Sharon Thornton has also submitted a declaration in response to HHA's response to Miniex's Motion. E. Sharon Thornton, Esquire's Response to Defendant Houston Housing
(continued…)

pertinent matters of record, and relevant legal authority, the Court **grants in part and denies in part** the Motion and awards Miniex $898,429.00 in attorney fees and $53,900.89in costs incurred by Berg & Androphy ("B&A") and original counsel in this case, LOESTLLC.

## I.   BACKGROUND

Defendant HHA, one of the nation's largest public housing authorities, hired Plaintiff Karen Miniex in March 2012 to serve as its general counsel.  Miniex served in that role until HHA's President and CEO, Tory Gunsolley, terminated her employment in December 2016.

In February 2017, Miniex sued HHA, alleging causes of action for: (1) interfering with her rights under the Family Medical Leave Act ("FMLA"); (2) retaliating against her for asserting her rights under the FMLA; (3) retaliating against her for engaging in activity protected by the False Claims Act ("FCA"); (4) violations of the Texas Whistleblower Act; (5) invasion of privacy; and (6) employment discrimination and retaliation in violation of Title VII.[4]

When Miniex filed suit, she was represented by Sharon Thornton, Esq., of Intervenor LOESTLLC, and Scott Cook, Esq.  In July 2017, Miniex replaced Scott Cook with Terrance Robinson, Esq.  In September 2017, Miniex discharged Terrance Robinson as counsel.  Thornton represented Miniex, on an hourly and, later, a contingency fee arrangement until Miniex terminated that attorney-client

---

(continued…)
Authority's Response to Plaintiff Karen Miniex's Motion for Attorney's Fees & Costs ("Thornton's Response") [Doc. # 268].

[4]      Plaintiff's Original Complaint [Doc. # 1], ¶¶ 32-46.

relationship in December 2017 and hired B&A.  LOESTLLC is currently engaged in arbitration with Miniex to recover fees and costs based on Thornton's work.[5]

After B&A was retained to represent Miniex, she amended her complaint.[6] Miniex dropped all prior claims other than her FMLA and FCA retaliation claims. She added a claim against HHA for violating her due process rights by discharging her in a stigmatizing manner.

After substantial discovery, HHA moved for summary judgment seeking dismissal of all Miniex's claims.[7]   Miniex also moved for partial summary judgment on HHA's various affirmative defenses.[8]   Magistrate Judge Dena Palermo recommended granting HHA's motion in full and denying Miniex's motion.[9]  This Court adopted in large part Judge Palermo's recommendation, adopting the grant of summary judgment in favor of HHA on its defenses and on all Miniex's claims except her FCA retaliation claim.[10]

After a six-day trial, the jury found that Miniex had suffered retaliation based on her exercise of rights protected by the FCA.[11]  The jury found Miniex was

---

[5]     Demand for Arbitration and Statement of Claim [Doc. # 245-1].

[6]     Plaintiff's Third Amended Complaint [Doc. # 59].

[7]     Motion for Summary Judgment [Doc. # 105].

[8]     Plaintiff's Motion for Partial Summary Judgement & Motion to Strike Improper Affirmative Defenses [Doc. # 106].

[9]     Order on Cross Motions for Summary Judgment [Doc. # 171].  Based on a defect in the parties' consent, this Court deemed Judge Palermo's order as a "Report and Recommendation."  *See* Hearing Minutes & Order [Doc. # 176].

[10]    Memorandum and Order Adopting in Part and Overruling in part Magistrate Judge's Recommendation [Doc. # 182].

[11]    Verdict Form [Doc. # 233].

entitled to recover $370,571 in lost back pay, $600,000 in lost front pay, and $317,750 and $215,000 in past and future emotional damages, respectively. The Court entered judgment on that verdict awarding Miniex $751,502 in back pay and $46,786 in pre-judgment interest, plus the front pay and emotional damages found by the jury.[12] After detailed consideration of HHA's post-judgment motion, the parties' related briefing, and the trial evidence, the Court concluded that certain aspects of the jury verdict were excessive or unsupported by the evidence.[13] The Court awarded Miniex $216,861 in front pay, and ordered a $100,679.66 remittitur of Miniex's past emotional damages award, resulting in a proposed award of $217,070.34 or a new trial. The Court also found the trial evidence warranted only nominal future emotional damages of $100.[14]

Following the entry of final judgment, the Court permitted LOESTLLC to intervene in this case to protect its and Thornton's interest in any attorney fee recovery by Miniex.[15]

Miniex originally requested $1,021,419.50 in attorney fees and $85,552.77 in costs associated with B&A's representation.[16] She has since reduced her attorney fee request to $924,895.50 to account for nonbillable time and increased

---

[12]     Pursuant to 31 U.S.C. § 3730(h)(2), the Court doubled the jury's back pay award of $370,571. Memorandum and Order dated April 17, 2019 [Doc. # 241], at 9.

[13]     Memorandum and Order dated September 5, 2019 [Doc. # 276] at 43-45.

[14]     *Id.* at 62-63. The Court originally entered judgment on the verdict, resulting in an award of $600,000 in front pay and $317,750 and $215,000 in past and future mental anguish damages, respectively. Final Judgment [Doc. # 242].

[15]     Memorandum and Order dated June 5, 2019 [Doc. # 264].

[16]     Motion at 1.

her costs request to $114,131.01.[17]   To demonstrate her entitlement to these fees and costs, Miniex submits redacted B&A time records,[18] unredacted time and billing records under seal, itemized lists of expenses,[19] two affidavits from Zenobia Harris Bivens, Miniex's lead attorney,[20] and two declarations from unaffiliated lawyers averring B&A's rates are reasonable.[21]

Intervenor LOESTLLC contends Miniex should receive $474,003.75 in attorney fees and $74.03 in costs attributable to Thornton's representation.[22]   The LOESTLLC fee and costs requests will be considered separately from B&A's request.

## II.   ATTORNEY FEES

### A.   Legal Standard

Under the FCA, a prevailing FCA retaliation plaintiff is entitled to "reasonable attorneys' fees."   *See* 31 U.S.C. 3730(h)(2).   The parties agree that the "lodestar method" is the proper approach for calculating attorney fees under the FCA's retaliation provision.[23]   *See Howell v. Town of Ball*, No. 1:12-CV-00951,

---

[17]   Reply at 1.

[18]   Redacted Time Records [Doc. # 261-1].

[19]   Technology and Transportation Expense Records [Doc. # 261-3]; Deposition Expense Records [Doc. # 261-4]; Postage & Filing Fee Expense Records [Doc. # 261-5].

[20]   Affidavit of Zenobia Harris Bivens dated May 31, 2019 [Doc. # 261-6]; Affidavit of Zenobia Harris Bivens dated June 21, 2019 [Doc. # 271-4].

[21]   Declaration of Patrick J. O'Connell [Doc. # 261-7]; Declaration of Robert H. Ford [Doc. # 261-8].

[22]   Thornton's Declaration ¶¶ 13-14.

[23]   Motion at 9; Response at 2.

2018 WL 580055, at *1 (W.D. La. Jan. 26, 2018) (applying lodestar method to calculate prevailing FCA retaliation plaintiff's reasonable attorney fees).

In the Fifth Circuit, "[t]he first step in determining statutorily authorized attorneys' fees is to calculate a 'lodestar' amount." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). The lodestar amount is the product of reasonable hours times a reasonable rate in the lawsuit's venue. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). There is a "strong presumption" that the lodestar amount represents a reasonable fee. *See Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

After calculating the lodestar, "[t]he court must then consider whether the lodestar should be adjusted upward or downward, depending on the circumstances of the case and the [12] factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *McClain*, 519 F.3d at 284. The twelve *Johnson* factors are:

    (1)    the time and labor involved;

    (2)    the novelty and difficulty of the questions;

    (3)    the skill requisite to perform the legal services properly;

    (4)    the preclusion of other employment by the attorney due to this case;

    (5)    the customary fee;

    (6)    whether fee is fixed or contingent;

    (7)    time limitations;

    (8)    the amount involved and results obtained;

    (9)    the experience, reputation and ability of counsel;

    (10)    the undesirability of the case;

    (11)    the nature and length of the professional relationship; and

    (12)    awards in similar cases.

*Von Clark v. Butler*, 916 F.2d 255, 258 n.3 (5th Cir. 1990) (citing *Johnson*, 488 F.2d at 717-19).  "The court, however, may not adjust the lodestar figure based on a *Johnson* factor already taken into account during the initial calculation." *Ramirez v. Lewis Energy Grp., L.P.*, 197 F. Supp. 3d 952, 956 (S.D. Tex. 2016).

"The fee applicant bears the burden of proving that the number of hours and the hourly rate for which compensation is requested is reasonable." *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996).  "A district court must 'explain with a reasonable degree of specificity the findings and reasons upon which the award is based.'" *Id.* (quoting *Von Clark*, 916 F.2d at 258).

### B.    The Parties' Contentions

Miniex seeks $924,895.50 in attorney fees based on legal services rendered by B&A.  Miniex's request is summarized below:

| Name | Position | Rate/Hr. | Hours | Billings |
|------|----------|----------|-------|----------|
| Zenobia Bivens | Partner | $600 | 852.6 | $511,560.00 |
| Victoria Mery | Associate | $450 | 256.7 | $115,515.00 |
| Michael Hurta | Associate | $325 | 273.2 | $88,790.00 |
| Veronica Fort | Paralegal | $225 | 171.1 | $38,497.50 |
| Jean Rivers | Paralegal | $275 | 45.2 | $12,430.00 |
| Avery Addison | Law Clerk | $165 | 483.4 | $79,761.00 |
| Carlos Doroteo | Law Clerk | $165 | 223.4 | $36,861.00 |
| Anthony Fontana | Law Clerk | $165 | 96.8 | $15,972.00 |
| Jarquita Williams | Law Clerk | $165 | 93.0 | $15,345.00 |
| Justin Click | Law Clerk | $165 | 30.9 | $5,098.50 |
| Mercer Day | Law Clerk | $165 | 30.7 | $5,065.50 |
| **Total** | | | **2,557** | **$924,895.50** |

LOESTLLC advocates Miniex is entitled to an additional attorney fee award of $474,003.75 based on Thornton's work.  LOESTLLC contends Thornton's reasonable billing rate is $375 per hour and she reasonably spent 1,264.01 hours on this litigation.

HHA contends B&A's reasonable rates and time are as follows:

| Name | Position | Rate/Hr | Hours | Billings |
|------|----------|---------|-------|----------|
| Zenobia Bivens | Partner | $325 | 500.0 | $162,500.00 |
| Victoria Mery | Associate | $292 | 150.0 | $43,800.00 |
| Michael Hurta | Associate | $211.25 | 160.0 | $33,800.00 |
| Veronica Fort | Paralegal | $125 | 0.0 | $0.00 |
| Jean Rivers | Paralegal | $178.75 | 0.0 | $0.00 |
| Six Law Clerks | Law Clerk | $107 | 712.27 | $76,212.89 |
| **Total** | | | **1,522.27** | **$355,599.04** |

HHA further contends Thornton's reasonable rate is $285 per hour and her reasonable time expended in this litigation is 156.5 hours. Accordingly, HHA argues Miniex's recoverable fee for Thornton's time is $44,589.67.

## C.    Reasonable Rates

In setting a reasonable billing rate, courts consider the attorney's regular rate as well as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *see also La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995). Fee applicants should "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Islamic Ctr. of Miss. v. Starkville*, 876 F.2d 465, 469 (5th Cir. 1989) (citing *Blum*, 465 U.S. at 895).

The Court concludes Bivens's ($600), Mery's ($450), Hurta's ($325), and Thornton's ($375) requested rates are reasonable for this case. The Court, however, concludes that the rest of B&A's legal professionals' requested rates are too high and should be adjusted downward. The Court reduces the hourly rate of Veronica Fort to $165, Jean Rivers to $180, and the law clerks to $100.

1. **Bivens's, Mery's, Hurta's, and Thornton's Requested Rates Are Reasonable**

HHA contends B&A's and Thornton's rates should be capped at $325 per hour pursuant to published rates by State Bar of Texas ("SBOT").  HHA contends that, pursuant to the 2015 SBOT Hourly Fact Sheet on attorney fees, the median hourly rate for firms similarly sized to B&A in the Houston area was $270.  Within those parameters, attorneys practicing for 16 to 20 years as of the 2015 survey commanded a median rate of $300, attorneys practicing 11 to 15 years charged a median rate of $257, and attorneys practicing for 3 to 10 years charged a median rate of $250.  Litigation in a specialized area of law, such as labor and employment, raised the median hourly rate to approximately $285 within the Houston area.

The Court is unpersuaded that the median rates for labor and employment lawyers in the 2015 SBOT survey is a reliable gauge for reasonable hourly rates for work performed in 2017 through 2019 by B&A's attorneys and Thornton.  The SBOT survey data is several years old, provides only median rates, and is of questionable reliability because of a very low response rate (only 9.6% of Houston lawyers responded to the survey).  *See Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) (holding the district court did not clearly err by disregarding State Bar data).  Furthermore, the median rates the survey report serve only "as a starting point."  *See Furlow v. Bullzeye Oilfield Servs., LLC*, No. SA-15-CV-1156-DAE, 2019 WL 1313470, at *3 (W.D. Tex. Jan. 3, 2019), *report and recommendation adopted*, No. 5:15-CV-1156-DAE, 2019 WL 1313454 (W.D. Tex. Jan. 29, 2019); *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2015 WL 3999171, at *2 (N.D. Tex. July 1, 2015) (nature and complexity of the litigation warranted higher rates than the median); *Ibarra v. United Parcel Serv., Inc.*, No. MO-10-CA-113, 2013 WL 12121463, at *2 (W.D. Tex. July 9, 2013) (attorney's

9

specialization justified higher rate than the median). "When relying on the [SBOT] Rate Survey, the Court will utilize the median rates as a starting point, and then evaluate whether the requested rates should be adjusted based upon various factors, including the size of the billing attorney's firm, the nature of the litigation, and the billing attorney's specific credentials." *See Furlow*, 2019 WL 1313470, at *3.

The B&A attorneys representing Miniex possess unusually robust credentials for lawyers at a small firm. They graduated with strong performances from highly ranked law schools, and each attorney served in one or two prestigious clerkships.[24] Bivens had prior employment at two exceptionally well-regarded law

---

[24]     Zenobia Harris Bivens is a 2008 graduate of Northwestern University Pritzker School of Law with honors. After graduating, she clerked on the Fifth Circuit Court of Appeals and the Texas Supreme Court. She worked for Vinson & Elkins LLP and Susman Godfrey LLP before joining B&A in 2015. Bivens became a partner at B&A in 2017. Bivens specializes in parallel proceedings—cases that cross between civil and criminal proceedings—and Government investigations. Her practice involves white collar defense and FCA litigation. While at B&A, Bivens has obtained several civil and criminal jury verdicts and participated in numerous appeals involving the FCA. In 2018, Bivens was recognized as a Texas Super Lawyers Rising Star. Bivens is a member of several professional associations, including the American Bar Association, Federal Bar Association, Houston Bar Association, Association of Women Attorneys, Houston Lawyers Association, and the Texas Criminal Defense Association. Bivens represents that her ordinary rate is $750 an hour, but she accepted a discounted rate in this lawsuit.

Victoria Mery is a 2012 graduate of Harvard Law School, where she served on the executive board of the Harvard Civil Rights-Civil Liberties Law Review. Before joining B&A, she clerked on United States District Court of the Southern District of Texas. Mery has argued at multiple hearings in state and federal court, taken and defended several depositions, prepared various motions, and presented and cross-examined witnesses in both civil and criminal trial proceedings.

Michael Hurta is a 2015 graduate of the University of Texas School of Law. Before joining B&A, he clerked on United States District Court of the Southern District of Texas and the Texas Supreme Court. Hurta has been involved in one
(continued…)

firms.  Most significantly, Bivens's experience includes varied trial and appellate experience in complex commercial cases.   The other B&A attorneys have impressive litigation experience for counsel with their seniority.  Thus, reasonable billing rates for these attorneys are materially higher than the HHA-advocated median rates for Texas attorneys statewide who are a similar number of years out of law school.

A billing rate substantially higher than the median for Bivens also is reasonable because of her specialization in FCA *qui tam* litigation, an uncharted and somewhat complex area of law.  Miniex's prosecution of this FCA retaliation case was substantially aided by Bivens's specialization and expertise with complex litigation.   This lawsuit raised novel issues created by the 2009/2010 FCA amendments and Miniex's employment as HHA's general counsel.  *See Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009) (holding that the relevant "community" can include a national "community of practitioners" when "the subject matter of the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market"); *U.S. ex rel. Liotine v. CDW-Gov't, Inc.*, No. 3:05-cv-00033-DRH-PMF, 2013 WL 11267176, at *5 (S.D. Ill. May 17, 2013) (Frazier, M.J.) (concluding that the FCA is a "highly specialized" practice area with a nationwide reach).   *Cf. In re Temple Ret. Cmty., Inc.*, 97 B.R. 333, 342 (Bankr. W.D. Tex. 1989) (concluding bankruptcy specialists' rates should be compared

---

(continued…)
other trial which also resulted in a verdict in favor of B&A's client.  Hurta also has experience arguing jury instructions and pre-trial motions, as well as managing discovery and drafting appellate briefs.

against regional or national rates and that "looking solely to the local community's range of rates would impose an unnecessarily parochial cap on the case").

B&A's rates are further supported by two detailed and credible declarations from Houston and Austin attorneys, one of whom specializes in FCA litigation.[25] These attorneys aver that Bivens's, Mery's, and Hurta's rates in are reasonable for FCA litigation in the Houston area.

Thornton's requested rate is similarly reasonable. Thornton is a 2001 graduate of the University of Michigan Law School. After graduation, she worked for King & Spalding LLP for four years, and then in-house at The Weather Channel Companies. She later reentered private practice as a principal of her own law firm. Based on Thornton's experience and credentials, the Court concludes her requested rate of $375 is reasonable.

### 2. Veronica Fort's Reasonable Hourly Rate Is $165

HHA requests a reduction of Veronica Fort's hourly rate from $225 to $125 per hour. Fort holds an associates degree in paralegal studies and has 19 years of experience as a trial paralegal. Based on prevailing rates for paralegal services in the Houston legal market and Fort's qualifications and experience, the Court concludes $165 an hour is the reasonable rate for Fort's paralegal services. *Cf. Michels Corp. v. EMS USA, Inc.*, No. CV H-16-2370, 2018 WL 2995637, at *1 (S.D. Tex. Feb. 5, 2018) (Stacy, M.J.) (recognizing the following prevailing hourly market rates for paralegals in the Houston market: more than 20 years of experience: $165.00; 10 to 20 years of experience: $115.00; five to nine years of experience: $95.00; and zero to four years of experience: $65.00); *Rouse v. Target Corp.*, 181 F. Supp. 3d 379, 390-91 (S.D. Tex. 2016) (finding $100.00 per hour

---

[25]   Declaration of Patrick J. O'Connell [Doc. # 261-7]; Declaration of Robert H. Ford [Doc. # 261-8].

reasonable for paralegal work and collecting cases in this district finding $75.00 to $125.00 reasonable).

### 3.     Jean Rivers's Reasonable Hourly Rate Is $180

HHA requests a reduction of Jean Rivers's rate from $275 to $178.75 per hour.  Rivers holds a bachelor's degree in Philosophy and is a certified e-discovery specialist.  She has served as B&A's Director of Litigation Support for five years.  Before that, she had worked for thirteen years as a paralegal.  She is President of the Houston Chapter of Women in E-Discovery.  She regularly speaks on the importance of e-discovery.  In this case, Rivers organized, reviewed, and analyzed HHA's document production.  Specifically, she performed significant e-discovery tasks in this case, which were particularly important given the highly contentious and nuanced nature of the factual disputes.  She analyzed and indexed document metadata and confirmed that it complied with the metadata requirements of the document requests.   Rivers also performed tasks that are assigned to junior attorneys in larger firms, such as drafting a portion of Miniex's document requests.

Miniex offers no evidence or authority indicating the reasonable rates for e-discovery specialists in the Southern District of Texas.  Having reviewed Rivers's time entries, the Court concludes that much of her work is comparable to an experienced paralegal's.  Accordingly, the Court finds that Rivers's time should be awarded at a sophisticated paralegal's rate.  Based on River's 18-years' experience and somewhat specialized credentials, the Court concludes that her reasonable rate is $180 per hour. *Cf. Michels Corp.*, 2018 WL 2995637, at *1.

### 4.     The Law Clerks' Reasonable Hourly Rate Is $100

HHA requests a reduction of B&A's law clerks' billing rate from $165 to $107 per hour.  Miniex submits no evidence detailing the law clerks' relevant experience, standing in their law schools, qualifications, credentials, or even whether the law clerks are students or practicing attorneys.  The Court assumes the

law clerks are law students.  The Court finds that a reasonable rate for law clerks' work is $100.  *See Rouse*, 181 F. Supp. 3d at 390 (noting that a rate of $75 to $125 per hour is reasonable for students performing work as law clerks); *Ramirez*, 197 F. Supp. 3d at 957 (awarding no fees for law clerk work when the plaintiff submitted "no information regarding the law clerk's qualifications, credentials, or even whether her law clerk is a student or practicing attorney"); *Kiva Kitchen & Bath, Inc. v. Capital Distrib., Inc.*, No. H-06-2562, 2008 WL 11452433, at *10 (S.D. Tex. Apr. 22, 2008) (awarding $100 per hour for a law clerk whose background or experience was not explained), *aff'd*, 319 F. App'x 316 (5th Cir. 2009); *Condon v. Hunting Energy Servs. L.P.*, No. H-04-3411, 2006 WL 2882857, at *2 (S.D. Tex. Oct. 4, 2006) (Hittner, J.) (reducing law clerks' hourly rates from $100 to $50 because their "backgrounds [were] not detailed").

### D.    Reasonable Time

"[P]laintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment," *i.e.*, "documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006).  "The Fifth Circuit has been willing to accept 'less-than-perfect documentation.'" *Adhikari v. Daoud & Partners*, No. 4:09-CV-1237, 2017 WL 5904782, at *11 (S.D. Tex. Nov. 30, 2017) (quoting *Portillo v. Cunningham*, 872 F.3d 728, 742 (5th Cir. 2017)). "But it has rejected, for instance, a fee application supported only by an attorney's affidavit that asserted entitlement to a particular sum 'in conclusory fashion.'" *Id.* (quoting *Bynum v. Am. Airlines, Inc.*, 166 F. App'x 730, 736 (5th Cir. 2006) (*per curiam*)).  "The Fifth Circuit has also rejected an application with "only summaries of [attorneys'] timesheets" that lacked notations indicating the subject matter of the work." *Id.* (quoting *Von Clark*, 916 F.2d at 259).

14

### 1.    B&A's Billings

HHA challenges the reasonableness of specific aspects of B&A's hours billed.   In particular, HHA challenges B&A's time spent briefing summary judgment motions, responses, and objections; law clerks' time spent preparing for trial and in trial; time spent preparing for mediation; and time spent on clerical tasks.   HHA further challenges the overall number of hours B&A billed in this litigation.[26]  The Court considers each of these challenges.

### a.    Time Spent Briefing the Summary Judgment Motions and Objections

HHA challenges the reasonableness of B&A's hours billed to brief Miniex's response to HHA's motion for summary judgment, time spent on Miniex's own motion for summary judgment, and Miniex's objections to Magistrate Judge Palermo's report and recommendation.   HHA contends B&A's time spent litigating these motions and objections should be reduced by 35% to account for the time spent preparing and pressing claims that were ultimately dismissed— specifically, Miniex's due process and FMLA claims.  Miniex responds that a fee reduction on this basis is not warranted because all her claims are factually interrelated, and B&A wrote off any time entry related solely to an unsuccessful claim.   The Court finds that, while the claims were factually related, a 35% reduction in compensable hours is nevertheless appropriate.

"Where a prevailing party was only partially successful, the court must consider two further issues: first, the relationship between the claims on which the

---

[26]    HHA has not responded to B&A's revised fee request totaling $924,895.50, which reduced the billings for fees by $96,524.  B&A's revised fee request eliminated from requested attorney fees some of the time legal assistants apparently spent copying and engaging in other clerical tasks.  These charges are addressed in the "Costs" section of this Memorandum and Order, *infra*.

plaintiff succeeded and those on which he did not, and second, whether the plaintiff achieved a level of success that makes the hours expended a satisfactory basis for a fee award." *Catholic Leadership Coal. of Tex. v. Reisman*, No. A-12-CA-566-SS, 2015 WL 418117, at *5 (W.D. Tex. Jan. 30, 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).   In a suit where the plaintiff presents "distinctly different claims for relief that are based on different facts and legal theories," counsel's work on unsuccessful claims is unrecoverable because such work "cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'"  *See Hensley*, 461 U.S. at 434-35 (quoting *Davis v. County of Los Angeles*, No. 73-63-WPG, 1974 WL 180, at *3 (C.D. Cal. June 5, 1974)).   By contrast, where a plaintiff's successful and unsuccessful claims "involve a common core of facts or will be based on related legal theories," the Court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *See id.* at 435.

The Court determines that Miniex's dismissed claims are somewhat factually interrelated with her successful FCA retaliation claim.  The Court finds that time spent litigating the dismissed claims should not be automatically deducted from her fee award.  The factual circumstances surrounding Miniex's last year of employment at HHA was relevant to some degree to each claim.  Miniex's FCA retaliation and FMLA retaliation claims were alternative theories of relief that each depended on the same alleged adverse employment actions.  One of HHA's defenses to Miniex's FCA retaliation claim—that it properly followed its grievance procedure—is intertwined with Miniex's claim that HHA's grievance procedure violated her due process rights.  Because Miniex's dismissed claims are not "distinctly different" from her FCA retaliation claim, the Court will not automatically deduct time spent on her dismissed claims from her fee award.  *See id.* at 434-35.

The Court nonetheless concludes that a 35% reduction of B&A's time spent on the motions for summary judgment and objections is warranted because Miniex's "relief, however significant, is limited in comparison to the scope of the litigation as a whole." *See Combs v. City of Huntington*, 829 F.3d 388, 394 (5th Cir. 2016) (emphasis removed) (quoting *Hensley*, 461 U.S. at 440); *id.* at 396 ("In determining a reasonable attorney's fee award based on the plaintiff's degree of success, '[t]here is no precise rule or formula'; instead, the district court 'necessarily has discretion in making this equitable judgment.'" (quoting *Hensley*, 461 U.S. at 436-37)).   Although Miniex recovered lost wages and emotional damages on her FCA retaliation claim, she achieved only partial success relative to the full scope of her claims and relief sought in this litigation.   Had Miniex prevailed on her FMLA claims, she would be entitled to recover her improperly denied benefits, interest, and potentially liquidated damages on those lost benefits. *See* 29 U.S.C. § 2617(a)(1)(A).   Similarly, had Miniex prevailed on her due process claim, she would have been entitled to recover for her reputational injury and may potentially have been entitled to punitive or exemplary damages. *See Rosenstein v. City of Dallas*, 876 F.2d 392, 398 (5th Cir. 1989) (holding that damages for denial of a name-clearing hearing include harm to "reputation and career"); *Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017) ("Punitive damages may be awarded in § 1983 cases 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).   Moreover, Miniex's counsel devoted substantial time to researching and briefing her unsuccessful claims.   For example, in her 25-page response to HHA's motion for summary judgment, Miniex devoted more than one-

third to her due process and FMLA claims.[27]  Five of Miniex's twelve objections to Magistrate Judge Palermo's report and recommendation exclusively related to Miniex's due process and FMLA claims.[28]

The Court therefore reduces by 35% the time spent by B&A on briefing the summary judgment motions and objections.  This results in reduction of the following B&A time: Zenobia Bivens, 33.9 hours; Michael Hurta, 6.8 hours; Anthony Fontana, 7.4 hours; Avery Addison, 42.3 hours; and Veronica Fort, 8.9 hours.

### b. Law Clerks' Time Spent on "Trial Preparation" and at Trial

Miniex seeks to recover for 250 hours of "trial preparation" and time spent in trial by Avery Addison, Carlos Doroteo, and Justin Click.  Addison, Doroteo, and Click are B&A "law clerks."  Miniex represents that none of the law clerks were passive observers and that some of their time has been written off.

This law clerk time is not recoverable.  Addison, Doroteo, and Click's "trial preparation" entries, which span seven to twenty-one hours a day for the days leading up to trial, are not sufficiently descriptive to warrant a fee award. Moreover, these entries are excessive considering the time spent preparing for trial by three experienced, well-qualified, and highly credentialed attorneys who were assisted by an experienced paralegal.  These four individuals collectively spent more than 480 hours in trial preparation.  The law clerks did not participate in the proceedings before the Court and, based on the Court's observation of their

---

[27]    *See* Plaintiff Karen Miniex's Response to Defendant's Motion for Summary Judgment [Doc. # 132], at 16-25.

[28]    *See* Plaintiff Karen Miniex's Objections to Report & Recommendation on Cross-Motions for Summary Judgment [Doc. # 180], at 12-16.

involvement in this case, appeared merely to be observing proceedings.  While B&A represents that the law clerks performed some research or other out-of-court functions, this assertion is unsupported by any detail and appears duplicative of attorneys' and paralegals' time during that period.  The Court finds that the billings for the law clerks' time spent in trial preparation and at trial were excessive, constitute impermissible overstaffing, and are insufficiently described to warrant compensation.  *See Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990) ("Hours which, though actually expended, . . . result from the case being 'overstaffed,' are *not* hours 'reasonably expended' and are to be excluded from this calculation." (alteration in original) (quoting *Hensley*, 461 U.S. at 434)); *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982) ("[T]here should have been no compensation for hours spent . . . in the passive role of an observer while other attorneys performed."); *Furlow*, 2019 WL 1313470, at *7 ("Hours resulting from overstaffing a case, even though actually expended, are not reasonable, and should be excluded from an award of attorney's fees.").  *See also Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1360 (4th Cir. 1995) (affirming district court's reduction of fee award to account for "time spent by an attorney in attending trial when that attorney examined no witnesses at trial and had 'no active participation' in the trial").  Accordingly, Miniex's recovery may not include the following hours: Avery Addison, 117 hours; Carlos Doroteo, 137.5 hours; and Justin Click, 14 hours.

### c.      Paralegal Time Spent on Clerical Tasks

HHA contends that paralegal Veronica Fort's time should be reduced to account for clerical tasks.  Paralegal fees may be recovered "only to the extent that the paralegal performs work traditionally done by an attorney." *Quanta Servs., Inc. v. Am. Admin. Grp., Inc.*, No. H-06-1827, 2008 WL 11394368, at *2 (S.D. Tex. Mar. 20, 2008).  Legal work includes "preparing trial exhibits, document

19

production, drafting expert witness designations, preparing summons, and drafting discovery responses." *Id.* at *3. Legal work does not include ministerial or clerical work such as reviewing and calendaring deadlines; printing, copying, and filing documents; drafting cover letters; ordering transcripts; organizing and updating materials and binders; loading and organizing computer databases; redacting and assembling exhibits; and transmitting documents. *See Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, No. 4:09-0422, 2017 WL 6942658, at *12 (S.D. Tex. Sept. 21, 2017).

The Court's review of Fort's revised billing records, which reflect Fort's overall time spent on this lawsuit for which Miniex presently seeks recovery, reveals numerous entries for clerical tasks including printing, organizing binders or documents on a computer drive, uploading documents to a server, renaming documents, transcribing notes, and reviewing and calendaring deadlines. This time is not recoverable as attorney fees. Accordingly, the Court reduces Fort's time by 45.5 hours.[29]

### d.    Time Spent Preparing for Mediation

HHA challenges B&A's time spent preparing for mediation in March and April 2018. Miniex seeks recovery of a total of 157.6 hours preparing for mediation (Avery Addison, 48.8 hours; Jarquita Williams, 28.2 hours; Veronica Fort, 9.5 hours; Victoria Mery, 1.8 hours; Zenobia Bivens, 69.3 hours). The tasks actually performed by the law clerks and attorneys are not meaningfully described. Also, the Court finds the total amount of time in preparation for mediation was

---

[29]    HHA contends *none* of Jean Rivers's time is recoverable because it was spent on e-discovery management. Having reviewed Rivers's time entries, the Court determines her work on this matter is recoverable as paralegal services. Management of e-discovery is complex, often is significant to case outcomes, and sometimes is performed by attorneys.

excessive, and appears duplicative of others' similar work.  The Court will not grant recovery of time spent preparing for mediation by Williams, Fort, or Mery, and will reduce Addison and Bivens's time in this regard by 50%.  Miniex may recover for 24.4 and 34.65 hours of Addison's and Bivens's time spent preparing for mediation, respectively.

### e.    B&A's Overall Time

B&A requests a total fee award for 2,557 hours worked from December 2017 to March 2019. HHA challenges B&A's overall number of hours billed in this litigation as excessive.  HHA argues that this litigation contained relatively mundane legal and factual issues, and B&A's overall time spent is excessive in comparison to the hours billed by HHA's attorneys.  HHA submits an affidavit from its lead counsel, averring that his law firm billed approximately 1,800 hours in defense of this case.[30]

The Court is persuaded that, after the reductions ordered above, the overall number of hours billed by B&A was not excessive.  Further, a comparison to HHA's counsel's hours billed is not probative or persuasive in this case.  B&A successfully represented Miniex in this especially contentious lawsuit for more than fifteen months.  This representation encompassed detailed and extensive discovery, a six-day trial, and 29 pre- and post-trial motions of varying complexity and length, including several motions to compel and two motions for summary judgment.  More than 25,000 pages of documents were produced and had to be reviewed. Detailed analysis was important to Miniex's success at trial.  Bivens, Miniex's lead counsel, took ten depositions.  Bivens spent approximately 12 hours

---

[30]    Affidavit of Brian J. Begle [Doc. # 267-6].  HHA does not argue that B&A's time spent should be reduced to account for duplication of effort created by its replacement of Thornton.

in hearings and 44 hours in court during the six-day trial. She was assisted in court by more junior attorneys, as appropriate. These proceedings warranted substantial preparation time.

Bivens explains she exercised billing judgment by reducing B&A's hours billed by approximately 10% before submitting the fee application, and further reduced B&A's fee request after receiving HHA's response. Bivens represents that B&A cut from the request all the time for timekeepers who billed less than 50 hours on the case before any reduction for excessive or duplicative time.[31] Bivens further represents that B&A has not sought recovery of time spent on unsuccessful claims or that appeared superfluous, vague, or duplicative.

The Court finds that there is no need to reduce B&A's recoverable billings merely because B&A's hours billed exceeded HHA's counsel's billed time. HHA's counsel's approach to this litigation unnecessarily increased the amount of time required to prosecute Miniex's claims. As evident during pretrial proceedings and trial, HHA's document production improperly omitted material documents and was presented in ways that required time-intensive and unnecessarily complicated discovery disputes on at least two occasions. For instance, HHA's document production was inappropriately formatted, causing B&A and the Court to expend substantial amounts of time determining what documents had been produced, which documents were claimed privileged, and which documents deserved such designation. For these and other reasons evident from the Court's written and oral pretrial rulings, the total time HHA's counsel spent on this litigation does not

---

[31]     Miniex seeks recovery for 30.9 of Justin Click's hours billed and 30.7 of Mercer Day's hours billed. Each law clerk originally billed more than 50 hours in this lawsuit, but Bivens reduced their billable time to account for excessive or duplicative work.

govern the amount of time the Court finds reasonable for B&A's pursuit of Miniex's claims in this case.

Moreover, subject to reductions of hours imposed by the Court above, the amount of time for which Miniex seeks compensation for work by B&A counsel, paralegals, and law clerks is appropriate relative to the complexity of this litigation. As demonstrated by Magistrate Judge Palermo's recommendation to grant summary judgment on Miniex's FCA retaliation claim and this Court's decision not to adopt that recommendation, the claim raised several complex legal and factual issues. These issues included the effect of the 2009/2010 amendments to the FCA, which has not been resolved by the Fifth Circuit; whether Miniex qualified as a "fraud alert" employee and what effect that designation had on the notice to HHA required for Miniex to establish an FCA retaliation claim; and the scope of Miniex's job duties at HHA.[32] These issues were repeatedly raised by HHA in this lawsuit, including during the summary judgment phase before the magistrate judge and the undersigned, to some extent at trial, and in post-trial briefing. Miniex, through B&A, was required to respond. Moreover, the alleged fraudulent scheme that Miniex was concerned continued to exist was factually complicated, and involved discovery and trial preparation of numerous witnesses, all of which warranted a substantial expenditure of time. Most of B&A's time for which Miniex seeks recovery was reasonable and necessary.

---

[32]    HHA seeks an across the board reduction for block billing. Having reviewed B&A's billing records, the Court concludes that a time reduction for counsel's sporadic and infrequent block billing is inappropriate. *See OneBeacon Ins. Co. v. T. Wade Welch & Assoc.*, No. H-11-3061, 2015 WL 5021954, at *8 (S.D. Tex. Aug. 24, 2015) (declining to reduce attorney fees for block billing). The Court elsewhere has reduced B&A's timekeepers' billings for lack of adequate description. Those reductions will suffice.

Based on the forgoing, the Court concludes that 2,044.65 of B&A's 2,557 billed hours are recoverable, and Miniex is entitled to an award of $756,229 in attorney fees for based on B&A's work.

### 2.  Thornton's Billings

Thornton contends 1,264 of her billed hours are recoverable.  Thornton avers that, during the 14 months that she worked on Miniex's case, she performed the following categories of tasks:

> [1] assisted Ms. Miniex with a substantive employment grievance and demand; [2] addressed various benefits issues related to the termination of her employment; [3] conducted substantial legal research; [4] evaluated the viability of Ms. Miniex's claims and grievances; [5] engaged in lengthy but necessary communications via email and telephone with Ms. Miniex, opposing and co-counsel, and other essential individuals; [6] reviewed voluminous electronic records; [7] drafted research memoranda; [8] strategized and implemented a litigation plan; [9] identified and interviewed witnesses; [10] prepared and filed an EEOC claim and subsequent rebuttal to defendants' position statement; [11] collaborated with co-counsel and filed Ms. Miniex's well-pleaded suit; [12] participated in federal court hearings; [13] petitioned HUD's OIG for a Touhy Request and prepared and oversaw the execution of an OIG Special Agent's Affidavit in connection therewith; [14] engaged in motion practice and discovery; [15] prepared for and conducted depositions; [16] created a detailed damages model; and [17] prepared for and attended Ms. Miniex's first mediation in October 2017.[33]

Thornton also avers that she coordinated with co-counsel so as to not duplicate efforts and double bill for the same work.[34]  Thornton states that she exercised

---

[33]     Thornton's Declaration ¶ 12.

[34]     *Id.* ¶ 10.

24

billing judgment, did not bill for every email, text message, or phone call, and wrote off 163.92 hours of her time.[35]

HHA contends that Thornton's 1,264 requested hours should be reduced dramatically to 156.5 hours. HHA submits a copy of Thornton's billing entries, purportedly color-coded as either properly billable or improperly billable. HHA identifies improperly billed entries, that is, entries that either do not relate to the FCA retaliation claim (the sole claim on which Miniex prevailed) or are incomprehensible or insufficiently described.[36] LOESTLLC responds with a declaration from Thornton, explaining why each challenged entry is properly billable.[37]

As explained hereafter, the Court has made a careful review of Thornton's original billings, her declaration, and her summary of the hours worked. The Court concludes that recovery of 30% of Thornton's requested hours is appropriate and reasonable. A 70% cut of Thornton's requested hours is necessary because she fails to demonstrate how the majority of her billed time contributed Miniex's ultimate success on her FCA retaliation claim. Some of Thornton's original time entries [Doc. # 260] and virtually all her summaries of those entries [Doc. # 268] are vague boilerplate recitations of her opinion of the entries' relevance. Her

---

[35]   *Id.* ¶¶ 10-11, 13.

[36]   *See* "Sharon Thornton's Coded Billing Records" ("Coded Records") [Doc. # 267-7]. The Court has reviewed the billing entries and concludes some of the color coding is incorrect. The Court does not rely on HHA's coding.

HHA does not argue that Thornton's billed hours should be reduced to account for the duplication of effort created by her withdrawal and B&A's substitution as Miniex's counsel.

[37]   Thornton's Response [Doc. # 268].

original time entries and summaries contain virtually no substantive descriptions or reasoning explaining why the particular work performed materially assisted in the success of the FCA retaliation claim.  As noted above, a plaintiff's "ultimate recovery" and "relative success" are both important factors in determining the proper fee award.  *See Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 358 (5th Cir. 1990).  *See also Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 577 (5th Cir. 2018) ("The most critical factor that a court should look to in reducing the fee is the degree of success obtained.").  This is because "[p]revailing party status 'may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.'"  *Saizan*, 448 F.3d at 799 (quoting *Hensley*, 461 U.S. at 436).  "A reduced fee award is appropriate if the *relief*, however significant, is limited in comparison to the scope of the litigation as a whole."  *Combs*, 829 F.3d at 394 (alteration in original) (quoting *Hensley*, 461 U.S. at 440).  "This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."  *Hensley*, 461 U.S. at 436.  "In determining a reasonable attorney's fee award based on the plaintiff's degree of success, '[t]here is no precise rule or formula'; instead, the district court 'necessarily has discretion in making this equitable judgment.'"  *Combs*, 826 F.3d at 396 (quoting *Hensley*, 461 U.S. at 436-37).

As noted, the Court has carefully reviewed Thornton's Declaration [Doc. # 260], in addition to her time entries and descriptions of work she reportedly performed as she set forth in her "Response" [Doc. # 268] to HHA's objections to her claimed fees.  Thornton asserts she engaged in substantial and varied services for Miniex during and prior to filing this case.  Thornton's descriptions are superficial and repetitive.  Where containing detail, the time entries reveal that much of her time was devoted to tasks that constitute client counseling during the events giving rise to the claims originally asserted in this case.  The descriptions do

not convey work done in furtherance of investigating, drafting or winning the FCA retaliation claim.   Indeed, Thornton repeatedly describes efforts to prevent litigation, to posture for a general wrongful termination claim, to handle the EEOC charge on non-FCA claims, to develop a damage model, and to perform "non-segregable work done in furtherance of Plaintiff's lawsuit."   Nor does Thornton demonstrate how assisting Miniex with her employment grievance, addressing benefits issues, preparing and filing an EEOC claim, petitioning HUD for a Touhy Request, or attending the first mediation in this case are linked to Miniex's ultimate success on the FCA retaliation claim. Thornton does not establish what motion practice she engaged in, and whether that practice benefitted Miniex on the FCA retaliation claim.   Moreover, there is no indication from Thornton's billings what legal research she performed, what witnesses she interviewed, what claims her evaluations of Miniex's case involved, or whether Miniex ultimately used the damages model Thornton created at trial.[38]   The vague descriptions of work performed undermine compensability of much of the time claimed.[39]

The Court's review also reveals that at least 80 hours of Thornton's time allegedly spent on legal research is of questionable accuracy for lack of a meaningful description.   Six of Thornton's entries totaling 80 hours are identical, stating: "Substantive legal research on various colorable claims and applicable State and federal governmental statutes and regulations, including, without limitation, HUD rules and regs, relating to client's complex case."   Each of these

---

[38]   During much of the time of Thornton's representation, the damages Miniex claimed at trial had not yet occurred.

[39]   Thornton's claimed hours include at least 30.5 hours that should be cut because they relate to time spent exclusively on unsuccessful claims or claims never asserted.

curious entries occurs on the first of a month and purports to cover time spent on legal research for the upcoming month. Five of the six entries are each exactly 10 hours, with the last entry being 30 hours.

Moreover, Thornton does not contradict Miniex's representation that when Thornton was replaced by B&A, this lawsuit was still in its nascent stages. While four depositions had been taken, two would have to be retaken. Document production was still in its early phases. During Thornton's representation of Miniex, she did not submit a response to the single contested motion filed by HHA. It is also noted that a not insignificant number of tasks Thornton performed were clerical in nature.

Finally, comparison to Bivens's billed hours is instructive. The Court concludes that Bivens reasonably expended 754.05 hours in this case. During that time, she took ten depositions, spent substantial time briefing, editing, and arguing numerous motions, including summary judgment motions and objections to the Magistrate Judge's rulings, prepared for trial, was lead counsel at a six-day trial, and has litigated complex post-trial matters.

Notwithstanding the foregoing deficiencies in Thornton's billings, the Court recognizes that Thornton filed this suit and apparently engaged in some meaningful factual and legal investigation. She identified and asserted from the outset an FCA retaliation claim for Miniex. Therefore, an award of some fees for Thornton's work is appropriate. The Court concludes that 30% of Thornton's request is a reasonable attorney fee for the work she performed related to the claim on which Miniex prevailed. A fee in excess of this figure has not been shown to reflect an expenditure of time that "was reasonable in relation to the success achieved." *See Saizan*, 448 F.3d at 799. The Court accordingly will reduce Thornton's requested time by 70%. Miniex may recover for 379.2 of Thornton's claimed hours.

### E.    The Lodestar Figure and Other *Johnson* Factors

For the foregoing reasons, the attorney fee lodestar figure totals $898,429.00.  This figure comprises the following for each timekeeper:

| Name | Position | Rate/Hr. | Hours | Fee |
|------|----------|----------|-------|-----|
| Zenobia Bivens | Partner | $600 | 784.05 | $470,430.00 |
| Sharon Thornton | Partner | $375 | 379.2 | $142,200.00 |
| Victoria Mery | Associate | $450 | 254.9 | $114,705.00 |
| Michael Hurta | Associate | $325 | 266.4 | $86,580.00 |
| Veronica Fort | Paralegal | $165 | 107.2 | $17,688.00 |
| Jean Rivers | Paralegal | $180 | 45.2 | $8,136.00 |
| Avery Addison | Law Clerk | $100 | 299.7 | $29,970.00 |
| Carlos Doroteo | Law Clerk | $100 | 85.9 | $8,590.00 |
| Anthony Fontana | Law Clerk | $100 | 96.8 | $9,680.00 |
| Jarquita Williams | Law Clerk | $100 | 64.8 | $6,480.00 |
| Justin Click | Law Clerk | $100 | 16.9 | $1,690.00 |
| Mercer Day | Law Clerk | $100 | 30.7 | $3,070.00 |
| **Total** | | | **2,423.85** | **$898,429.00** |

HHA argues that four *Johnson* factors (time and labor required; novelty and difficulty of the issues; preclusion of other employment; and undesirability of the case) warrant a downward adjustment of the lodestar.  Miniex responds that each of these factors warrant an upward adjustment and then argues that three other *Johnson* factors (requisite skill; amount involved and results obtained; and experience, reputation, and ability of the attorneys) warrant an upward adjustment.  Thornton superficially addresses nine of the *Johnson* factors and contends each support her hourly rate and time spent litigating this case.

The Court has considered the parties' arguments and concludes that each *Johnson* factor previously has been considered within the lodestar calculation, weighs as neutral, and/or does not warrant an adjustment to the lodestar.  First, counsel's time and labor required has already been considered in calculating the lodestar figure.  Second, the novelty and difficulty of the issues is neutral because

this case contained a significant number of routine retaliation employment issues as well as several challenging questions of first impression under the FCA.  Third, the preclusion of other employment has already been considered in calculating counsel's reasonable rate and no party persuades the Court this factor warrants an adjustment.  Fourth, neither party persuasively argues that this case is uniquely desirable or undesirable.  Fifth, the requisite skill and experience, reputation, and ability of the attorneys all have been considered in calculating counsel's and paralegals' reasonable rates.  Sixth, the amount involved and results obtained have been considered in calculating the reasonable hours spent on this litigation and whether to reduce counsel's reasonable hours to account for their only partial success during the summary judgment phase of this case.

Accordingly, the Court concludes that Miniex's appropriate attorney fee award is the lodestar figure of $898,429.00.

## III.   COSTS

Miniex presently requests the Court award her $114,131.01 in costs.[40]

| Expense Type | Amount |
| --- | --- |
| In-House Printing | $33,768.40 |
| Depositions | $27,749.53 |
| Expert Fees | $26,535.75 |
| Legal Research | $14,134.57 |
| Document Management | $6,050.66 |
| Copies | $1,358.89 |
| Air Travel | $1,349.18 |
| Deposition Notice | $1,216.76 |
| Local Delivery | $664.00 |
| Transportation/Parking | $377.50 |

---

[40]     Reply at 22.  Miniex originally requested $85,552.77 in litigation costs.  Motion at 18.

| | |
|---|---|
| Transcript | $377.25 |
| Witness Lodging | $268.25 |
| Court Records | $144.40 |
| Trial Technology | $86.60 |
| Trial Supplies | $44.57 |
| Research | $5.00 |

Thornton requests the Court award Miniex an additional $74.03 in costs she incurred for photocopies and postage.

HHA contends that only $36,902.49 of Miniex's cost request is appropriate under 28 U.S.C. § 1920. HHA challenges Miniex's request for expert fees, legal research fees, air travel, local delivery, witness lodging, transportation/parking, trial technology, and trial supplies. HHA does not oppose Thornton's costs request. The Court, for the reasons that follow, concludes that costs recoverable by Miniex in this suit total $53,900.89.

### A.  General Legal Standard for Costs

"Our legal system generally requires each party to bear his own litigation expenses . . . regardless whether he wins or loses. Indeed, this principle is so firmly entrenched that it is known as the 'American Rule.'" *Fox v. Vice*, 563 U.S. 826, 832 (2011). Under 28 U.S.C. § 1920, a court "may tax as costs the following":

(1)    fees of the clerk and marshal;

(2)    fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)    fees and disbursements for printing and witnesses;

(4)    fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)    docket fees under section 1923 of this title; and

31

(6)     compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services.

*See* 28 U.S.C. § 1920.  Section 1920 "define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority to go further."  *See W.V. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 87 (1991).[41]  Because § 1920 states in detail the recoverable costs available in federal court, it will govern the scope and type of costs available absent a "*clear* intention otherwise."  *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (emphasis in original). Accordingly, "to exceed the limitations explicitly set out" in § 1920, there must be "plain evidence of congressional intent to supersede [§ 1920]."  *Id.* at 445.  Relying on these principles, the Supreme Court has repeatedly held that the term "costs" in other provisions "is defined by the categories of expenses enumerated in 28 U.S.C. § 1920."  *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006) ("costs" in 20 U.S.C. § 1415(i)(3)(B)); *Casey*, 499 U.S. at 87 n.3 ("costs" in 42 U.S.C. § 1988); *Crawford Fitting*, 482 U.S. at 441, 445 ("costs" in Federal Rule of Civil Procedure 54(d)).

Following *Casey* and *Crawford Fitting*, the Fifth Circuit held that a district court "may only award those costs articulated in [28 U.S.C. §] 1920 absent *explicit* statutory or contractual authorization to the contrary."  *See Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010) (citation omitted).[42]

---

[41]     The Supreme Court in *Casey* held that fees for services rendered by experts in civil rights litigation may not be shifted to the non-prevailing party under 42 U.S.C. § 1988.  *See* 499 U.S. at 97-102.  Subsequent to *Casey*, Congress expanded § 1988 to allow prevailing plaintiffs to recover their expert fees.  *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 251 (1994).

[42]     In *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001), the Circuit held that Title VII's cost shifting provision—which permits a
                                                                                                    (continued…)

Accordingly, the Fifth Circuit and several other Courts of Appeals have held cost-shifting provisions which offer a slight variation on the term "costs"—for example, provisions which shift "costs of action" or "full costs"—do not authorize recovery of costs beyond those expressly identified in 28 U.S.C. § 1920.  *See Cook Children's Med. Ctr. v. New England PPO Plan of Gen. Consol. Mgmt. Inc.*, 491 F.3d 266, 275 (5th Cir. 2007) (holding ERISA's cost-shifting provision—which permits recovery of "costs of action"—"does not constitute an explicit authorization to tax mediation costs" or confer "a blanket power to tax costs"); *Artisan Contractors Ass'n of Am., Inc. v. Frontier Ins. Co.*, 275 F.3d 1038, 1040 (11th Cir. 2001) (*per curiam*) (holding Copyright Act's cost-shifting provision—which permits recovery of "full costs"—did not authorize recovery of costs beyond those set forth in § 1920); *Pinkham v. Camex, Inc.*, 84 F.3d 292, 295 (8th Cir. 1996) (same).[43]

## B.   Miniex May Recover Costs Beyond Those Expressly Authorized Under 28 U.S.C. § 1920

Under the FCA, a prevailing FCA retaliation plaintiff is "entitled to all relief necessary to make" him or her "whole," including "litigation costs and reasonable

---

(continued…)

prevailing party to recover "reasonable attorney's fee (including expert fees) as part of the costs"—did not permit recovery of the cost of videotaped depositions or mediation because neither are authorized by 28 U.S.C. § 1920 (quoting 42 U.S.C. § 2000e-5(k)).

[43]   Courts do not uniformly treat these slight variations as immaterial.  Citing the anti-surplusage canon, some courts have concluded that the varying words must authorize recovery beyond the costs listed in § 1920, otherwise the varying words would be superfluous.  *See, e.g.*, *Guzman v. Hacienda Records*, No. 6:12-CV-42, 2015 WL 4920058, at *4 (S.D. Tex. Aug. 18, 2015) (Costa, D.J.) (noting that the Copyright Act's cost-shifting provision—which permits recovery of "full costs"— allowed recovery of costs broader than those authorized by § 1920).

attorneys' fees." *See* 31 U.S.C. § 3730(h)(1)-(2).  The parties dispute whether the FCA's cost-shifting provision is an "explicit" congressional authorization for a broader recovery of costs than those allowed under 28 U.S.C. § 1920.  Miniex contends § 3730(h)(2) authorizes recovery of all reasonable litigation costs regardless whether those costs are specifically enumerated in § 1920.  HHA responds that the "litigation costs" provided for in § 3730(h)(2) are limited to the items enumerated in § 1920.

HHA identifies no authority supporting its contention that § 3730(h)(2) does not support recovery of costs beyond § 1920.  Instead, HHA cites *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 127-28 (5th Cir. 2015), a case holding that a defendant who prevails against a *qui tam* relator is permitted to recover only costs listed in § 1920.  This reasoning misses the mark.  The relevant statutory provisions in *Long*, 31 U.S.C. § 3730(d)(1) and (2), authorize recovery of costs for a prevailing *qui tam* plaintiff.  But, notably, costs in FCA retaliation cases are governed by a different provision, specifically, § 3730(h).  The *Long* Court thus did not address the provision in issue here, § 3730(h), and is inapplicable to the present dispute. The Court turns to the question whether the FCA retaliation cost-shifting provision authorizes recovery of costs beyond § 1920.

This Court is aware of three non-binding decisions addressing the term "litigation costs" in 31 U.S.C. § 3730(h)(2) which favor HHA's interpretation. The Seventh Circuit held, without detailed analysis, that the term "litigation costs" in § 3730(h)(2) refers only to ordinary costs provided for under 28 U.S.C. § 1920. *See Neal v. Honeywell, Inc.*, 191 F.3d 827, 834 (7th Cir. 1999) (Easterbrook, J.). There, the Seventh Circuit observed, without citing any case law or statutory authority, that "'[l]itigation costs' sounds like a reference to ordinary costs," which is "what the list in § 1920 defines." *Id.*  Two district courts outside the Seventh Circuit have adopted *Neal*'s holding without independent analysis. *See Thompson*

34

*v. Quorum Health Res., LLC*, No. 1:06-CV-168, 2010 WL 2044542, at \*4 (W.D. Ky. May 21, 2010) ("The Court finds that the Seventh Circuit's argument is persuasive and § 3730(h) litigation costs should be limited to those costs set out in § 1920."); *Kakeh v. United Planning Org.*, 657 F. Supp. 2d 15, 18 (D.D.C. 2009) (positively citing *Neal* and holding that a plaintiff could not recover expert witness fees as "litigation costs" under § 3730(h)(2)).

The Court does not find these decisions persuasive and concludes that the term "litigation costs" in 31 U.S.C. § 3730(h)(2) is not limited to costs enumerated in § 1920.  Miniex identifies two types of "plain evidence of congressional intent to supersede [§ 1920]" that the *Neal* Court failed to consider.  *See Crawford*, 482 U.S. at 445.  First, § 3730(h)'s text, read in its entirety, strongly indicates "litigation costs" is not a mere "reference to ordinary costs," as the *Neal* court concluded.  *See* 191 F.3d at 834.  Section 3730(h)(1) provides that a prevailing FCA retaliation plaintiff is "entitled to *all* relief necessary to make" him or her "*whole*."  *See* 31 U.S.C. § 3730(h)(1) (emphasis added).  As the Fifth Circuit concluded about § 3730(h) in a related but distinct FCA context, the Court "think[s] Congress meant what it said.  'All means all,'" not merely the narrow categories of costs enumerated in § 1920.  *See Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 266 (5th Cir. 2014) (holding § 3730(h) authorizes recovery of noneconomic compensatory damages, including emotional distress and reputation harm (quoting *Kennedy v. Lynd*, 306 F.2d 222, 230 (5th Cir. 1962))).

Second, the purpose of the FCA's anti-retaliation provision is "remedial," and thus should be "construed 'broadly to effectuate its purpose.'"  *See U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 324 (5th Cir. 2016).  Other Courts of Appeals persuasively have relied on the remedial nature of cost-shifting provisions in the Freedom of Information Act and the Privacy Act to conclude that Congress intended to authorize cost recovery beyond § 1920.  *See Kuzma v. IRS*,

821 F.2d 930, 932-33 (2d Cir. 1987) (interpreting FOIA's provision for recovery of "other litigation costs" in 5 U.S.C. § 552(a)(4)(E)); *Blazy v. Tenet*, 194 F.3d 90, 95 (D.C. Cir. 1999) (interpreting Privacy Act's analogous provision for recovery of "other litigation costs" in 5 U.S.C. § 552a(g)(2)(B)).

HHA wholly fails to address either of these statutory arguments. Because Miniex cites "explicit statutory . . . authorization" for a recovery beyond those costs in § 1920, the Court will award costs beyond those expressly provided for in § 1920. *See Mota*, 261 F.3d at 529.

### C.    Miniex May Recover $53,900.89 in Litigation Costs

Miniex seeks recovery of $114,131.01 in litigation costs. While Miniex demonstrates entitlement to recover costs beyond those authorized by § 1920, she does not argue specifically what costs beyond those authorized by § 1920 are recoverable.

Because of insufficient documentation and argument, the Court does not resolve the question whether expert's fees are recoverable under § 3730(h)(2). Miniex submits no invoices, other documentation, or explanation why expert fees of $26,535.75 are reasonable. Having observed the trial and key proceedings in this case, the Court declines to award those expert fees.

The Court further concludes that Westlaw research fees and expenditures for in-house printing are not "litigation costs" under § 3730(h). In-house printing expenses are part of overhead or are clerical or secretarial in nature. *See Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982) (holding clerical tasks "are separately unrecoverable overhead expenses"); *Reyes v. Spur Disc. Store No. 4*, No. CIV.A. 07-2717, 2007 WL 2571905, at *3 (E.D. La. Aug. 31, 2007) ("Normally, clerical or secretarial costs are part of an attorney's office overhead and are reflected in the billing rate."). In-house printing are overhead expenses

subsumed by the hourly rates charged for attorneys and paralegal staff for which hourly fees may be recovered.

HHA challenges Miniex's request for air travel, local delivery, witness lodging, transportation/parking, trial technology, trial supplies, and Westlaw fees. The Court concludes these expenses qualify as recoverable litigation costs and are reasonable. *Cf. Hilton v. Executive Self Storage Assocs., Inc.*, No. CIV.A. H-06-2744, 2009 WL 1750121, at *16 (S.D. Tex. June 18, 2009) (holding that under the FLSA's fee and cost shifting provision, "[r]eimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment are types of litigation expenses that are recoverable" (quoting *Quintanilla v. A & R Demolition Inc.*, No. H-04-1965, 2007 WL 5166849, at *9 (S.D. Tex. May 7, 2007))).

Accordingly, the Court awards Miniex's litigation costs of $53,826.86 associated with B&A's representation and $74.03 in costs associated with Thornton's representation.

## IV.   CONCLUSION AND ORDER

For the foregoing reasons, Miniex is entitled to recover part of her attorney fee and litigation costs and HHA's objections are largely overruled.  It is therefore

**ORDERED** that Plaintiff Karen Miniex's Motion for Attorneys' Fees & Costs [Doc. # 261] is **GRANTED in part and DENIED in part**.  Plaintiff Miniex is awarded $898,429.00 in attorney fees and $53,900.89 in litigation costs.

SIGNED at Houston, Texas, this 13th day of **September, 2019.**

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

37